IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

FILED
FEB 3 2009
Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| THE CHEROKEE NATION,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND NASH, LARRY WASSON, ROBERT ALLEN, KATHY WASHINGTON, LISA DUKE, KEN SALAZAR, SECRETARY OF THE INTERIOR, AND THE UNITED STATES DEPARTMENT OF THE INTERIOR<br><br>Defendants. | **09 CV - 05 2 TCK   PJC**<br>Case No. _____ |

**COMPLAINT FOR DECLARATORY RELIEF**

Comes now the Plaintiff, the Cherokee Nation, and alleges and states:

1. The Cherokee Nation is a sovereign Indian nation recognized by the United States of America.

2. The Defendants are the Secretary of the Interior of the United States of America (the "Secretary"), and the United States Department of the Interior, who are responsible for the administration of the Treaty between the United States and the Cherokee Nation, July 19, 1866, 14 Stat. 799 ("1866 Treaty"), subsequent acts of Congress applicable to the 1866 Treaty and benefits to citizens of the Cherokee Nation based on their status as citizens, and Raymond Nash, Larry Wasson, Robert Allen, Kathy Washington, and Lisa Duke (the "individual defendants"), who as non-Indian Freedmen descendants resident in this federal judicial district publicly claim rights as alleged citizens of the Cherokee Nation under the Treaty of 1866, and benefits based on alleged status as citizens of the Cherokee Nation.



- 2 -

3. This action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 to resolve an actual case and controversy between the Cherokee Nation and the individual defendants arising from the 1866 Treaty and a federal statute as to whether non-Indian Freedmen descendants have a right to citizenship in the Cherokee Nation and benefits administered by the Secretary attendant to that legal status.

4. Subject matter jurisdiction is based on 28 U.S.C. §1331 and 28 U.S.C. §1362.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

6. Prior to European contact, ties of kinship were the overwhelming connection among Cherokees of different communities and all claims to citizenship rested on blood or marriage. As European colonists began settling in North America, the Cherokee Nation struggled to maintain its identity and territory.

7 European colonists introduced chattel slavery to the Cherokee Nation, believing that slave ownership would "civilize" the Cherokee Nation. The Cherokee Nation voluntarily abolished slavery in 1863, almost two years before the end of the Civil War. The former slaves became known as the Freedmen.

8. In 1866, the Cherokee Nation signed the 1866 Treaty with the U.S. Government. Article IX of the 1866 Treaty provided that the Freedmen and their descendants have all the rights of "native Cherokee." Although the 1866 Treaty did not require that the Freedmen be given citizenship in the Cherokee Nation, the Cherokee Nation, as an act of sovereignty, voluntarily amended the Cherokee Nation Constitution in 1866 to grant citizenship to the Freedmen, Intermarried Whites and foreign tribes resident in the Cherokee Nation.

9. On March 3, 1871, the U.S. Government ceased its policy of entering into treaties with the Cherokee Nation.

10. As part of its public policy aimed at destroying Indian government and promoting assimilation through an allotment of commonly-held tribal land to individual tribal members, between 1898 and 1907 the U.S. Government conducted a census in the Cherokee Nation lands in what ultimately became known as Oklahoma. Through that census the U.S. Government created four rolls: Cherokee by Blood, Delaware, Intermarried Whites and Freedmen. Collectively, these separate rolls became known as the Dawes Rolls, named for the chairman of the federal commission delegated to perform the census.

11. In 1906, pursuant to its then policy of dealing with Indian tribes by unilateral statute rather than through the bilateral treaty making process, Congress passed several acts including the Five Tribes Act, ch. 1876, §3, 34 Stat. 137 (1906) ("Five Tribes Act") modifying the 1866 Treaty.

12. As a result of the U.S. Government's action in modifying the Treaty of 1866 by the Five Tribes Act, Freedmen not living in the Cherokee Nation before February 11, 1867, a Freedmen's descendant not living in the Cherokee Nation at that time did not possess any rights of native Cherokees conferred by the 1866 Treaty. Further, no child born of a citizen would be entitled to citizenship after that date.

13. The Secretary is responsible for administering programs providing benefits to citizens of the Cherokee Nation.

## COUNT I

### CLAIM FOR A DECLARATORY JUDGMENT THAT THE NON-INDIAN FREEDMEN DO NOT UNDER THE TREATY OF 1866 HAVE RIGHTS OF CITIZENSHIP OF THE CHEROKEE NATION

14. A case and controversy exists between the Cherokee Nation and the non-Indian Freedmen descendant individual defendants as to whether the Treaty of 1866 currently mandates

909955.1:231629:02150

that non-Indian Freedmen descendants, including the individual defendants, enjoy the rights of citizens of the Cherokee Nation.

15. The non-Indian Freedmen descendent individual defendants contend that the Treaty of 1866 has not been modified and that they therefore are entitled by virtue of federal law to be citizens of the Cherokee Nation and to all the benefits of such status, including the benefits administered by the Secretary.

16. The Cherokee Nation contends that, by the Five Tribes Act and other statutes, the United States abrogated a portion of the Treaty of 1866, resulting in non-Indian Freedmen descendants, including the individual defendants, no longer having, as a matter of federal law, a right to citizenship of the Cherokee Nation.

17. The non-Indian Freedmen descendant individual defendants' contention is erroneous. The Cherokee Nation's contention is correct.

18. The Cherokee Nation is entitled to a resolution of this case and controversy in its favor through a judgment of this Court declaring that the Five Tribes Act and federal statutes modified the Treaty of 1866 thereby resulting in non-Indian Freedmen descendants, including the individual defendants, no longer, as a matter of federal law, having rights to citizenship of the Cherokee Nation and benefits derived from such citizenship.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff the Cherokee Nation requests the Court to enter its declaratory judgment granting the relief described in Paragraph 18 above, along with all other relief to which it is entitled, including but not limited to its costs.

Respectfully submitted,

909955.1:231629:02150

- 5 -

*(signature)*
Graydon Dean Luthey, Jr., OBA #5568
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, Oklahoma 74103-3708
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
dluthey@hallestill.com

and

A. Diane Hammons, OBA #10835
Attorney General
Cherokee Nation Department of Justice
P.O. Box 948
Tahlequah OK 74465-0948
Telephone: 918-453-5282
Facsimile: 918-458-5580
Diane-Hammons@cherokee.org

Attorneys for Plaintiff

909955.1:231629:02150