# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 11-CV-648-TCK-TLW |
| | ) |
| RAYMOND NASH, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is the Freedmen Defendants' Motion for Reconsideration or, in the Alternative, for Certification ("Motion to Reconsider") (Doc. 190). Therein, the Freedmen Defendants moved for reconsideration of the Court's Opinion and Order dated March 15, 2013 (Doc. 189), which denied the Freedmen Defendants' Motion to Transfer, Or in the Alternative, to Stay ("Motion to Transfer") (Doc. 178).

Upon consideration of arguments made in support of the Motion to Reconsider, and particularly arguments raised for the first time by the Federal Defendants, the Motion to Reconsider is granted. The Court's prior Order (Doc. 189) is withdrawn, and this Order substitutes as the Court's ruling on the Motion to Transfer.

## I. Background

### A. Procedural History

On July 2, 2010, the Court transferred *Cherokee Nation v. Nash, et. al.*, 09-CV-52-TCK ("Oklahoma action"), to the United States District Court for the District of Columbia ("D.C. Court") pursuant to the "first to file" rule. *See Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1168-72 (N.D. Okla. 2010) (holding that, due to similarity of parties and issues between the Oklahoma action and *Vann v. Salazar, et al.*, 03-1711-HHK ("D.C. action"), the D.C. Court should determine the

proper forum for the Oklahoma action).¹ The Court transferred the Oklahoma action because the D.C. Court's resolution of certain legal questions already pending before it would inform, if not control, the decision of where the Oklahoma action should proceed.

On September 30, 2011, the D.C. Court resolved those legal questions. Specifically, the court held that dismissal of the D.C. action was proper under Federal Rule of Civil Procedure 19(b) because the court could not, in equity and good conscience, proceed without the Cherokee Nation as a party. *See Vann v. Salazar*, 883 F. Supp. 2d 44, 48-53 (D.D.C. 2011) ("*Vann III*"), *overruled by Vann v. United States Dep't of Interior* ("*Vann IV*"), 701 F.3d 927, 929-30 (D.C. Cir. 2012). The district court reasoned that any judgment rendered in absence of the Cherokee Nation would be inadequate because "only the Chief . . . would be bound by the judgment" and that the Northern District of Oklahoma was not only an "adequate alternative forum, but a superior one" based on the Cherokee Nation's presence in the lawsuit. *Id.* at 51-52. The D.C. Court denied as futile the Freedmen Plaintiffs' motion for leave to add the Cherokee Nation as a party, rejecting the argument that the Cherokee Nation waived immunity in the D.C. action by filing the Oklahoma action. *See id.* at 53-55. Because the first-filed case was no longer pending, the court transferred the Oklahoma action back to this Court. The Freedmen Plaintiffs appealed dismissal of their claims to the D.C. Circuit.

---

¹ *Nash* provides extensive background information and is incorporated herein by reference. In short, the D.C. action was filed by six individual descendants of persons listed on the "Freedmen Roll" of the Cherokee Nation ("Freedmen Plaintiffs") against the United States Department of the Interior. In 2008, on interlocutory appeal, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") held that the Cherokee Nation was immune from suit and remanded the case for the district court to decide if, in equity and good conscience, the D.C. action could proceed in the Cherokee Nation's absence. While this question was being decided by the D.C. Court upon remand, the Cherokee Nation filed this action against five other descendants of Freedmen. The Court permitted the Freedmen Plaintiffs in the D.C. action to intervene in this action as defendants, and the Court refers to both the five original Freedmen defendants and the intervening Freedmen defendants as the "Freedmen Defendants."

Upon transfer, the Oklahoma action was reassigned Case No. 11-CV-468-TCK-TLW. On December 21, 2011, the Freedmen Defendants filed their first motion to stay, arguing that this Court should issue a stay for the same reasons it initially transferred the action. On February 1, 2012, the Court denied the motion to stay:

> The Court declines to stay these proceedings pursuant to the first to file rule or general discretionary principles authorizing a stay. In initially transferring this case, the Court desired to avoid taking any action in this litigation until the D.C. Court decided certain essential questions – namely, whether filing the Oklahoma action waived the Cherokee Nation's immunity in the D.C. action and whether the D.C. action would be dismissed due to the absence of the Cherokee Nation. The D.C. Court has decided such questions by declining to permit amendment and ultimately dismissing the case. While there exists some possibility that the D.C. Circuit Court of Appeals will reverse these rulings, this possibility is wholly speculative. In addition, this Court will not be entrenching upon the appellate court's decisions or duplicating its efforts. The appellate court will only be reaching jurisdictional issues, and this Court will be reaching the merits of the dispute. In short, the D.C. Court has now issued the rulings that this Court sought to avoid encroaching upon, and the Court finds that the Freedmen Defendants have failed to present a sufficient justification for any further stay of these proceedings.

(Doc. 101 (footnote omitted).)

On December 14, 2012, the D.C. Circuit reversed dismissal of the D.C. action and remanded it for further proceedings, holding that "the Cherokee Nation and the Principal Chief in his official capacity are one and the same in an *Ex parte Young* suit for declaratory and injunctive relief" and that "the Principal Chief can adequately represent the Cherokee Nation in this suit, meaning that the Cherokee Nation itself is not a required party for purposes of Rule 19." *Vann IV,* 701 F.3d at 929-30. The court reasoned:

> By contrast, if we accepted the Cherokee Nation's position, official-action suits against government officials would have to be routinely dismissed, at least absent some statutory exception to Rule 19, because the government entity in question would be a required party yet would be immune from suit and so could not be joined. But that is not how the *Ex parte Young* doctrine and Rule 19 case law has developed. . . . The claim here is that the Principal Chief – and through him, the sovereign tribe – is violating federal law. The defense is that the Principal Chief – and hence the

3

> sovereign tribe – is not violating federal law. This case presents a typical *Ex parte Young* scenario.

*Id.* at 930. In light of this disposition, the D.C. Circuit did "not reach the Freedmen's argument that the Cherokee Nation waived its sovereign immunity by filing a related suit in Oklahoma." *Id.*

On January 11, 2013, the Freedmen Defendants filed the Motion to Transfer. On March 12, 2013, the D.C. Circuit denied the Cherokee Nation's petition for rehearing en banc. On March 15, 2013, the Court denied the Motion to Transfer. (*See* Doc. 189.) Now before the Court is the Freedmen Defendants' Motion to Reconsider this Court's denial of the Motion to Transfer.

### B. Current Parties and Claims in the Oklahoma Action

The pleadings raise several claims, counterclaims, and cross-claims. The Cherokee Nation, as Plaintiff, seeks declaratory relief that descendants of individuals listed on the "Freedmen Roll" do not currently enjoy citizenship rights within the Cherokee Nation. Such relief is sought against five named descendants of Cherokee Freedmen. The Cherokee Nation originally also sought declaratory relief against the Secretary of the United States Department of the Interior and the United States Department of the Interior ("Federal Defendants") but then voluntarily dismissed its claim against them. Prior to dismissal, the Federal Defendants asserted a counterclaim against the Cherokee Nation seeking declaratory relief that descendants of individuals listed on the "Freedmen Roll" do currently enjoy citizenship rights within the Cherokee Nation. This counterclaim remains pending.

The Freedmen Defendants asserted a counterclaim against the Cherokee Nation, Principal Chief Bill John Baker ("Principal Chief"), Deputy Chief Principal Chief S. Joe Crittenden, Registrar John Doe, and five Cherokee Nation election officials (collectively "Cherokee Counter-Defendants"). This counterclaim is substantially similar, if not identical, to claims asserted by the

4

Freedmen Plaintiffs in the D.C. action. The Freedmen Defendants allege that deprivation of their citizenship rights violates the U.S. Constitution, the Cherokee Constitution, the Treaty of 1866, and various federal laws. The Freedmen Defendants have also asserted cross-claims against the Federal Defendants, which are substantially similar, if not identical, to those asserted in the D.C. action. The Freedmen Defendants allege that the Federal Defendants' actions and failures to act in relation to the Freedmens' citizenship violated the U.S. Constitution, violated various federal laws, and breached a fiduciary duty. There are pending motions to dismiss, and the Court has delayed entering a scheduling order pending ruling on such motions.

**II.     Motion to Transfer (Doc. 178)**

The Freedmen Defendants move to transfer this action to the D.C. Court pursuant to the first to file rule and/or 28 U.S.C. § 1404(a) or, alternatively, to stay this action pending the conclusion of the D.C. action. The Federal Defendants support the motion to transfer but, in the event the Court denies the motion to transfer, the Federal Defendants oppose a stay.

> In *Nash*, this Court summarized general first to file principles:
>
> (1) [A] second-filed court presented with a motion to transfer or stay pursuant to the first to file rule must make the initial determination of whether the first to file rule generally applies, *i.e.*, whether there is sufficient overlap of parties and issues between the two cases; (2) if the second filer argues for application of an equitable exception to the first to file rule, a second-filed court within the Tenth Circuit has discretion to either (a) allow the first-filed court to decide whether an exception applies, or (b) decide for itself whether an exception applies; and (3) there is a preference for allowing the first-filed court to decide whether an exception applies.

*Nash*, 724 F. Supp. 2d at 1167.[2] The Court concluded that the rule generally applied due to the similarity of parties and issues. The Court followed the general preference for allowing the first-filed court to decide where the Oklahoma action should proceed. *See id.* at 1168-73.

---

[2] For a more comprehensive explanation of this rule and its exceptions, see *Nash*, 724 F. Supp. 2d at 1164-67.

For the same reasons explained in *Nash*, the Court concludes that the first to file rule generally applies because (1) the D.C. action was filed six years prior to this action, and (2) there is a similarity of parties and issues. *See id.* at 1167-70. The D.C. Circuit's ruling in *Vann IV* only strengthens the Court's original "similarity of parties and issues" analysis because the D.C. Circuit held that "[a]s a practical matter . . . the Cherokee Nation and the Principal Chief in his official capacity are one and the same." *Vann IV*, 701 F.3d at 930.[3]

The more difficult question presented here is whether there exist special circumstances that trump the general rule. In its March 15, 2013 Order, the Court exercised its discretion to reach the equitable exception and decided that this case presented such an exception. The Court found that it could not "in good conscience transfer or stay the only action in which the Cherokee Nation has consented to resolution of these important issues." (Doc. 189.) The Court did so, in part, because the Nation threatened to further hinder any meaningful resolution in the first-filed case, which had already been pending for ten years, and because there would likely be no judgment against the Nation in such venue.

Based on new arguments made in support of the Motion to Reconsider, the Court now concludes that the first-filed court should be given the opportunity to decide certain legal issues and

---

[3] The Tenth Circuit has stated that the first court to "obtain jurisdiction" has priority. *See Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir.1965) ("The rule is that the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated."). The Cherokee Nation continues to argue that this Court was the first court to "obtain jurisdiction" over it. As explained in *Nash*, however, identical overlap of parties is not required for general application of the first to file rule. The D.C. Court was the first to obtain jurisdiction over the Principal Chief, and the Nation and the Principal Chief have been deemed "one and the same" for purposes of the relief sought in both cases. Thus, the Court continues to conclude that the first to file rule generally applies.

6

exercise its own discretion in applying the first to file rule.[4] Such questions may include but are not limited to whether the Nation waived immunity in all potential federal venues by filing this case;[5] whether the Nation enjoys any immunity whatsoever as to the Federal Defendants' counterclaim;[6] and whether any immunity enjoyed by the Nation creates an exception to the first to file rule, where the first-filed case involves an *Ex Parte Young* claim against its Principal Chief. Rather than assume or speculate what would become of this case if it ultimately proceeded in the D.C. Court, the Court will permit the D.C. Court to decide those questions and then decide the "venue fate" of this second-filed action.[7] Therefore, for similar reasons explained in *Nash*, *see id.* at 1171-72, the Court follows

---

[4] Both the Freedmen Defendants and Federal Defendants urge the Court to defer to the first-filed court for determining whether any exceptions apply, rather than decide these questions prior to transfer.

[5] As correctly argued by the Federal Defendants in support of the Motion to Reconsider, this is a slightly different issue than that previously addressed by Judge Kennedy in *Vann III*. The question addressed in *Vann III* was whether filing the Oklahoma action waived the Nation's immunity in the D.C. action, not in a potential transferee federal venue.

[6] This was brought into question for the first time in the Federal Defendants' brief in support of the Motion to Reconsider.

[7] When it denied transfer in its March 15, 2013 Order, the Court made certain assumptions regarding what would occur in this case in the event of transfer:

> The Nation has made clear that it intends to waive immunity and seek declaratory relief exclusively in this venue. Thus, upon transfer, it would presumably cease to seek declaratory relief and would re-assert immunity for any pending counterclaims. There would ultimately be no judgment for or against the Nation itself, despite the Nation's consent to suit in this venue. Under these unique circumstances, the Court finds that immunity in the transferee forum is a special circumstance that overrides the general first to file rule.

(Doc. 189.) In their brief in support of the Motion to Reconsider, the Federal Defendants challenged these assumptions. The Court has reconsidered the propriety of resolving these questions and will instead defer to the first-filed court.

the general rule of deference to the first-filed court for deciding whether any exceptions apply and where the second-filed action should proceed.

**III.     Conclusion**

The Oklahoma action and the D.C. action present identical underlying questions regarding the meaning of the Treaty of 1866 and the rights of the descendants of Cherokee Freedmen. Ideally, these questions would have been resolved years ago in a forum agreeable to the Cherokee Nation, the Federal Defendants, and the Freedmen. Instead, this Court and the D.C. Court have been forced to resolve questions related to immunity and venue, delaying any meaningful progress on the underlying issues.

Upon reconsideration of its March 15, 2013 Order, the Court now concludes that the D.C. Court should have discretion in deciding threshold legal issues, applying the first to file rule, and deciding where this action shall proceed. Therefore, the Motion to Reconsider (Doc. 190) is GRANTED. The Court's Opinion and Order dated March 15, 2013 (Doc. 189) is WITHDRAWN and vacated by this Opinion and Order. The Motion to Transfer (Doc. 178) is GRANTED for the purpose of permitting the D.C. Court to exercise its discretion in applying the first to file rule. The case is therefore transferred to the United States District Court for the District of Columbia, as related to *Vann v. Norton*, 03-1711-TFH.

**SO ORDERED** this 19th day of August, 2013.

*/s/ Terence Kern*
**TERENCE KERN**
**United States District Judge**